IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| KIMBERLY K. THARP, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 09-1072-CV-W-ODS |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## ORDER AND OPINION AFFIRMING COMMISSIONER'S FINAL DECISION DENYING BENEFITS

Pending is Plaintiff Kimberly K. Tharp's request for review of the final decision of the Commissioner of Social Security denying supplemental security income (SSI) benefits. The Commissioner's decision is affirmed.

## I. BACKGROUND

Tharp is a 38-year-old woman with some college education who last worked August 4, 2006, for Dean Machinery taking phone calls for parts orders. Tharp was admitted to a psychiatric hospital on August 14, 2006, for depressive symptomatology and suicidal ideation. Tharp was diagnosed with major depressive disorder and assigned a GAF score of 40 upon discharge.[1]

For the next two months, Tharp's GAF cores were assessed between 50 and 55.[2] Even in December 2006, after she reported she cut herself following a fight with

---

[1] A GAF score indicates a clinician's judgment of an individual's overall level of functioning. *See* American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (4th ed. text rev. 2000). A score in the 31-40 range reflects an individual with impaired reality testing or communication or major impairment in several areas, such as work or school, family relations, judgment, thinking, or mood. *Id.* at 34.

[2] A score in the 41-50 range reflects and individual with serious symptoms or any serious impairment in social, occupational, or school functioning; a score in the 51-

her step-father, Tharp was assessed with a GAF of 55. On January 16, 2007, J. E. Bucklew, PhD, a reviewing state agency psychologist, completed a psychiatric review technique form. Dr. Bucklew concluded Tharp's condition was not severe; he assessed her as having no episodes of decompensation and no restrictions on activities of daily living, mild difficulties in maintaining concentration, persistence, or pace, and only moderate difficulties in maintaining social functioning.

On January 25, 2007, Tharp received treatment from Comprehensive Mental Health Services in Independence, Missouri. Tharp reported unresolved posttraumatic stress disorder from date rape at the age of 17 as well as physical and emotional abuse by her biological father. She also reported problems with depression, anxiety, and panic attacks, and disclosed her tendency toward self-mutilation (cutting). She was diagnosed with posttraumatic stress disorder and personality disorder and assigned her a GAF of 50. A diagnosis of major depressive disorder was later rendered.

From about February 2007 to August 2007, Tharp reported high levels of anxiety and paranoia. Tharp also reported trouble sleeping, nightmares, and crying spells, as well as persistent, elevated levels of thoughts of self-harm. Tharp occasionally acted on those thoughts, cutting herself in April and June. Tharp's GAF score mostly was assessed at 50 (serious symptoms or impairment) for these months.

From September 2007 to December 2007, Tharp continued to report high levels of anxiety and paranoia. But she reported lower levels of thoughts of self-harm, and on December 19, 2007, Tharp's psychiatrist (Syed Jaffri, MD) noted Tharp's "[d]epression and anxiety seem to be relieving since she is on Effexor." Tharp's GAF score during this time period was consistently assessed at 55 (moderate symptoms or difficulty functioning).

Tharp continued to improve from January 2008 to September 2008. She still reported intermediate-to-high levels of anxiety, especially in social situations, as well as nightmares and isolating behavior, but she reported fewer thoughts of self-harm. Her

---

60 range reflects an individual with moderate symptoms or moderate difficulty in social, occupational, or school functioning. See DSM-IV-TR, at 34.

GAF score consistently was assessed at 55. From October 2008 to her hearing before the ALJ in April 2009, Tharp's GAF score was between 55-58, and she reported that she was sometimes able to manage her anxiety enough to go to stores and the library. During this period, Tharp's psychiatrist (Meghnad Desai, MD) noted she was "satisfied" with her current medications (which included Effexor) and encouraged her to participate in physical activities to help manage her anxiety.

At the hearing, Tharp testified that she continued to see Dr. Desai and continued to take Effexor, but she claimed she could not work because she was scared to be out in public, especially around men. She explained that she lost her job at Dean Machinery (after her hospitalization) due to excessive absences, and that she lost her job as a Jackson County corrections officer also because of excessive absences related to depression and anxiety.[3] Tharp testified she could drive to her father's house, the library, to her appointments, and to the store, but stated she only went to the store when it was least busy, and would never go after dark. Tharp's mother testified Tharp was able to cook and clean for herself, but that she spent most of her time in her room and would resist efforts to go out into public.

In fashioning a hypothetical worker for the vocational expert to consider, the ALJ described a person whose mental impairments limited her to nothing more than incidental public contact and only occasional coworker contact. The VE testified Tharp could not perform her past work,[4] but could perform other work. When asked to consider a hypothetical worker limited to only incidental contact with the public and coworkers and only occasional contact with supervisors, the VE testified the worker could be employed as a finishing machine operator, casting machine tender, collator operator, and electrical assembler, all of which the VE explained existed in significant numbers in the national economy.

---

[3] Tharp reported to her doctor on December 11, 2006, that she lost her job at Dean Machinery because she failed to disclose some medical information when she was hired.

[4] The VE assumed prisoners were part of public in concluding Tharp could not perform her work as a corrections officer.

The ALJ issued a final decision denying Tharp benefits. The ALJ found Tharp did not meet or equal listed impairments 12.04, 12.06, or 12.08, found under 20 C.F.R. § Pt. 404, Subpt. P., App. 1. The ALJ also determined Tharp had the residual functional capacity to perform the full range of work at all exertional levels, except Tharp could not have any job duties that required contact with the public or coworkers, and only occasional contact with a supervisor. Based on the VE's testimony, the ALJ concluded Plaintiff could perform jobs that existed in significant numbers in the national economy, resulting in a finding of not disabled.

## II. DISCUSSION

"[R]eview of [the Commissioner's] decision [is limited] to a determination whether the decision is supported by substantial evidence on the record as a whole. Substantial evidence is evidence which reasonable minds would accept as adequate to support the Secretary's conclusion. [The Court] will not reverse a decision simply because some evidence may support the opposite conclusion." *Mitchell v. Shalala*, 25 F.3d 712, 714 (8th Cir. 1994) (citations omitted). Though advantageous to the Commissioner, this standard also requires that the Court consider evidence that fairly detracts from the final decision. *Forsythe v. Sullivan*, 926 F.2d 774, 775 (8th Cir. 1991). Substantial evidence means "more than a mere scintilla" of evidence; rather, it is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Smith v. Schweiker*, 728 F.2d 1158, 1161-62 (8th Cir. 1984).

Tharp's first argument is that substantial evidence did not support the ALJ's determination she did not meet or equal a listed impairment. The only listed impairment Tharp mentions is 12.06, which applies to anxiety related disorders. This listing contains criteria in paragraphs A, B, and C; the listing is met if either A and B are satisfied, or if A and C are satisfied. The ALJ concluded neither B nor C were satisfied.

Paragraph B of 12.06 relates to functional limitations and requires at least two of the following: (1) marked restrictions of activities of daily living; (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration,

4

persistence or pace; or (4) repeated episodes of decompensation, each of extended duration. "'[M]arked'" means "more than moderate but less than extreme." *Id.* at 12.00C. It indicates a degree of limitation that "interfere[s] seriously with [the] ability to function independently, appropriately, effectively, and on a sustained basis." *Id.*

Substantial evidence supports the ALJ's determination paragraph B of 12.06 was not met. Dr. Bucklew, the reviewing state agency psychologist, concluded Tharp had no episodes of decompensation, no restrictions on activities of daily living, only mild difficulties in maintaining concentration, persistence, or pace, and only moderate difficulties in maintaining social functioning. Although Tharp continues to report anxiety in social settings, her GAF score consistently has been assessed between 55-58 since August 2007, and she reported much fewer thoughts of self-harm since that time. *See Halverson v. Astrue*, 600 F.3d 922, 929-31 (8th Cir. 2010) (holding history of GAF scores between 52 and 60 supported ALJ's decision to discount treating physician's opinion claimant was disabled). And contrary to Tharp's unsupported contention, there is no evidence she had serious difficulties maintaining concentration, persistent, or pace; in fact, she was noted as only having "mild" impairment in these areas. Paragraph B was not met.[5]

Substantial evidence also supports the ALJ's determination paragraph C of 12.06 was not met. Paragraph C requires a "complete inability to function independently outside the area of one's home." Although Tharp testified she could not go places where she knew no one and she consistently reported anxiety and paranoia regarding public places, she also reported during treatment in November 2008 and February 2009 that she was going out alone in public more often despite her anxiety. This establishes she was not *completely* unable to function independently outside her home. Since neither paragraph B nor C were met, Tharp did not meet listed impairment 12.06.

Tharp next contends the ALJ's assessment of her residual functional capacity was unsupported by substantial evidence. Tharp asserts the ALJ erred in not crediting

---

[5] This analysis with respect to paragraph B also supports the ALJ's determination Tharp did not meet listed impairments 12.04 (affective disorders) and 12.08 (personality disorders).

her testimony that she would miss an excessive amount of work. But Tharp's mental condition has improved since she reportedly missed excessive work at Dean Machinery. And her excessive absences as a corrections officer–when she claims she missed 3-4 days of work every 2 weeks–are not probative because she attributed that anxiety to being around people in a setting where her "life [was] on the line." The ALJ's RFC restricted Tharp from duties requiring contact with the public or coworkers and permitted only occasional contact with supervisors. Tharp's testimony about her absences does not preclude her from working under these conditions.

Tharp also argues the ALJ improperly drew her own inferences from the medical records. Tharp points to the part of the ALJ's decision where the ALJ found it "noteworthy" Tharp worked many years after being raped at age 17. But the ALJ was not drawing an unqualified medical conclusion from this evidence; the ALJ was merely noting evidence inconsistent with Tharp's claim. The ALJ is required to consider the whole record in evaluating Tharp's testimony. *See Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994). Tharp has not shown the RFC was unsupported by substantial evidence.

### III. CONCLUSION

The ALJ's RFC determination removed almost all socialization from Tharp's job duties. Based on this RFC, the VE testified Tharp could perform work that exists in significant numbers in the national economy. The ALJ's determination Tharp was not disabled is supported by substantial evidence and shall be affirmed. *See* 42 U.S.C. § 405(g).

IT IS SO ORDERED.

/s/ Ortrie D. Smith
ORTRIE D. SMITH, JUDGE
DATE: November 2, 2010                    UNITED STATES DISTRICT COURT